IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## JODELL L. DUNKIN v. DAVID H. DUNKIN

**Appeal from the Circuit Court for Davidson County**
**No. 96D-950     Muriel Robinson, Judge**

---

**No. M2002-01899-COA-R3-CV - Filed September 30, 2003**

---

This is a post-divorce dispute concerning the custody of Kaylea Jodell Dunkin ("the child") (DOB: July 1, 1994), the child of these litigants. The non-custodial parent, David H. Dunkin ("Father"), filed a petition seeking to enjoin the child's mother, Jodell L. Dunkin ("Mother"), from relocating with the child to Montana. Following a hearing, the trial court found that there was no reasonable purpose for the proposed move and that the relocation would not be in the best interest of the child. The trial court then denied Mother's request to relocate. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., joined. HOUSTON M. GODDARD, P.J., not participating.

P. Edward Schell, Franklin, Tennessee, for the appellant, Jodell L. Dunkin.

Clark Lee Shaw, Nashville, Tennessee, for the appellee, David H. Dunkin.

### OPINION

#### I.

The parties were divorced by way of a final judgment entered September 27, 1996. The trial court designated Mother as the primary residential custodian of the child and granted Father visitation every other weekend from Friday evening until Sunday evening. In addition, the trial court awarded Father visitation with the child from Friday evening until Saturday evening on the weekends that Wife worked, holidays on an alternating basis, and one week at Christmas. The divorce judgment does not contemplate or otherwise address the issue of Mother's relocation.

In August, 2001, Mother sent Father, via certified mail, a notice of her intent to relocate to Montana with the child. The notice was given pursuant to Tenn. Code Ann. § 36-6-108(a) (2001).

In that notice, Mother expressed her desire and intention to relocate to Glendive, Montana, so she could be with her mother, who was ill. In addition, Mother stated that the schools in Montana were better suited to handle the needs of the child, who suffers from Down's Syndrome. Shortly thereafter, Father filed a petition for change of custody, asking the trial court to enjoin Mother from relocating with the child. The trial court issued the requested restraining order on August 23, 2001.

The case was heard six months later on February 26, 2002. At trial, Mother testified that she had attempted to mainstream the child into regular classes in the Davidson County school system, but to no avail. Mother stated that the school system did not want to mainstream the child and that she was forced to pay for private educational programs for the child, such as speech therapy, occupational therapy, and reading classes. By way of contrast, Mother stated the school system in Glendive, Montana, offered such educational programs free of charge and that the school system would have no qualms about mainstreaming the child into a regular classroom. Other than her testimony on this subject, Mother offered no other evidence regarding the Montana school system or the educational programs that would be available to the child in that school system.

With respect to her mother's illness, Mother testified that her mother had been diagnosed with a brain tumor. When questioned about her mother's condition, Mother gave the following testimony:

> Q.   And you say your mother has a brain tumor. Do you know –
>       can you tell us a little bit more about that?
>
> A.   My mother has a brain tumor that is behind her pituitary
>       gland.
>
> Q.   Is it malignant?
>
> A.   We do not know that.
>
> Q.   Is there a way to perform some kind of surgery?
>
> A.   We do not know that.
>
> Q.   Okay. Well, is her – is she getting worse; better; or is she
>       staying the same?
>
> A.   She has days where she is real bad, and then days where she
>       is better.
>
> Q.   Is there any plan of treatment for your mother?

A.    My mother will have another MRI in March.

Q.    So at this point, they are monitoring the size of the tumor; is
      that correct?

A.    Right.

Q.    And they are doing that by MRIs.

A.    Right

Q.    And how many MRIs has she had?

A.    Three.

Q.    Over what period of time?

A.    A year.

Q.    Has the tumor grown any?

A.    Yes.

Q.    Has it grown to the point where anybody has been able to
      recommend any action?

A.    No.

Mother testified that she "could be a tremendous amount of assistance" to her mother, stating that she could drive her mother to the doctor. She stated that she is the oldest child and the only daughter. Mother also testified that she thought it would be good for the child to be around Mother's relatives. Mother stated that, in addition to her mother, she has two brothers who live in Glendive and a third brother who lives in Billings, Montana. She noted that her brothers have families, so the child would have cousins to play with, and Mother pointed out that she has aunts and uncles in eastern Montana as well.

When questioned about her employment opportunities in Montana, Mother, who is a registered nurse, testified that she had a job offer from a small community hospital in Glendive. Mother admitted that her salary would be "a little bit less" than what she was currently earning working for Baptist Hospital in Nashville.

While Mother stated that Father had not always exercised the visitation to which he is entitled, Father testified that he never missed visitation with the child, unless the child was sick with

a "serious illness," such as the flu. When asked about the frequency with which he would be able to see the child if Wife relocates to Montana, Father stated that he would not be able to see her very often due to several factors: the expense of the trip[1]; the amount of time it would take to get to and from Glendive[2]; the child's inability to travel on an airplane alone; and the fact that Father gets only two weeks of vacation per year. Father stated that telephone visitation would also be a problem, as the child does not communicate well over the telephone.

At the conclusion of the hearing, the trial court rendered its ruling from the bench, finding as follows:

* * *

> The Court concludes from the evidence that both of these parties are greatly involved in this child's life. The Court concludes that this move to Montana would be both severe and disruptive. There is no proof that [Mother] presents to me that would indicate this child would not be harmed by this move, because both of these parents have constant contact with this child.
>
> There is also no proof to this Court on what the educational program there would be; what is available; and how it would help the child. You danced around it, but you offered no proof, whatsoever, as to the programs actually presented to these type children in that school district. None, whatsoever, in this record. I cannot conclude from that, that this child – that this move would be in the best interests of this child.
>
> More so, I can conclude it would be harmful, because there is absolutely a lack of competent evidence before this Court, presented by the person that wants to move this child from this jurisdiction. So I cannot find that this move would not be harmful to the child, based on the evidence presented.
>
> [Mother] says she believes she would have a better educational opportunity, but she certainly has not proved it, one iota. Therefore, the Court finds that she does not sustain her position.

* * *

---

[1] Mother testified that a plane ticket from Nashville to Montana costs between $400 and $600; Father stated that such a ticket would cost approximately $550.

[2] Father testified that Glendive is located in eastern Montana, between Billings, Montana, and Bismarck, North Dakota. He stated that "it's an all-day plane flight, and about a four-and-a-half-hour drive to get to Glendive."

The mother can complete her move, if she desires. However, the child will remain here. I cannot find that this child won't be harmed by this move, and I can't find that the move is for a reasonable purpose, at this time.

I don't think she is making this move to interfere with the relationship. However, the benefits of the child remaining here outweigh the benefits of the child going there, because I have absolutely no information of what is going to happen when the child moves there.

It is understandable that she is concerned about her mother's health, but I can't choose that over the unit that this child has – the relationship she has with her father, . . . .

The trial court memorialized its findings in a final judgment, entered July 17, 2002. From this judgment, Mother appeals.

## II.

As this is a non-jury case, we must determine if the evidence preponderates against the trial court's judgment. Tenn. R. App. P. 13(d). Our review is *de novo* with a presumption of correctness as to the trial court's factual findings. *Id.* There is no such presumption, however, as to the trial court's conclusions of law. ***Campbell v. Florida Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

## III.

The issue in this case causes us to focus on Tenn. Code Ann. § 36-6-108 (2001), which provides, in pertinent part, as follows:

(a) If a parent who is spending intervals of time with a child desires to relocate outside the state or more than one hundred (100) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and

(4) Statement that the other parent may file a petition in opposition to the move within thirty (30) days of receipt of the notice.

(b) Unless the parents can agree on a new visitation schedule, the relocating parent shall file a petition seeking to alter visitation. The court shall consider all relevant factors, including those factors enumerated within subsection (d). The court shall also consider the availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent. . . .

* * *

(d) If the parents are not actually spending substantially equal intervals of time with the child[3] and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:

(1) The relocation does not have a reasonable purpose;

(2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or

(3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Specific and serious harm to the child includes, but is not limited to, the following:

(1) If a parent wishes to take a child with a serious medical problem to an area where no adequate treatment is readily available;

---

[3]The facts of this case clearly bring it within the ambit of subsection (d) of Tenn. Code Ann. § 36-6-108. Neither party argues to the contrary.

(2) If a parent wishes to take a child with specific educational requirements to an area with no acceptable education facilities;

(3) If a parent wishes to relocate and take up residence with a person with a history of child or domestic abuse or who is currently abusing alcohol or other drugs;

(4) If the child relies on the parent not relocating who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child;

(5) If the custodial parent is emotionally disturbed or dependent such that the custodial parent is not capable of adequately parenting the child in the absence of support systems currently in place in this state, and such support system is not available at the proposed relocation site; or

(6) If the proposed relocation is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system or which otherwise presents a substantial risk of specific and serious harm to the child.

(e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. . . .

IV.

Mother argues that the trial court erred in denying her request to relocate with the child. Mother asserts that the evidence preponderates against the trial court's finding that the relocation had no reasonable purpose, as that concept is embodied in Tenn. Code Ann. § 36-6-108(d)(1).

At the hearing in this matter, Mother advanced two reasons for her desire to move to Montana: the illness of her mother and a superior school system in Montana. With respect to her mother's illness, there was no proof presented that her mother's condition was terminal. Indeed, Mother had very little information to offer regarding her mother's illness, aside from the fact that her brain tumor had grown over the course of a year. Further, Mother testified that her entire family lives in Montana, including two of her brothers who actually live in Glendive. Mother offered no evidence as to why her brothers or other family members would not be capable of properly caring for her mother.

Mother stated that she would be receiving a smaller salary than what she is presently earning in Nashville. While this Court has found that an *increase* in salary or an opportunity for *career advancement* can be a factual predicate to constitute a reasonable purpose for relocation, *see Butler v. Butler*, No. M2002-00347-COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. M.S., filed February 20, 2003); *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. M.S., filed September 14, 2001); *Leach v. Leach*, No. W2000-00935-COA-R3-CV, 2001 WL 720635, at *4 (Tenn. Ct. App. W.S., filed June 25, 2001); *Connell v. Connell*, No. 03A01-9808-CV-00282, 2000 WL 122204, at *4 (Tenn. Ct. App. E.S., filed January 25, 2000), the subject cases are of no help to Mother, who, as previously indicated, is not moving because of a better employment opportunity and/or enhanced earnings.

The trial court also found that Mother offered no proof of the superiority of the Glendive school system and how its programs would assist the child. Based upon this finding, as well as the lack of evidence on the mother's condition and the decrease in salary Mother would receive in her new job, we hold that the evidence does not preponderate against the trial court's finding that the relocation does not serve a reasonable purpose.

Having upheld the trial court's finding on one of the three grounds found by the trial court for the denial of relocation pursuant to Tenn. Code Ann. § 36-6-108(d), there is no need for us to examine the remaining two grounds. However, we find it necessary to point out that the trial court made certain findings in the instant case which were negative, such as "[t]here is no proof that [Mother] presents to me that would indicate this child would *not* be harmed by this move" and "I cannot find that this move would *not* be harmful to the child, based on the evidence presented." (Emphasis added). It is important to note that the statute is triggered by *affirmative* findings rather than negative findings. In other words, when examining the "threat of serious and specific harm" to a child, *see* Tenn. Code Ann. § 36-6-108(d)(2), the trial court should look for proof of such a threat, rather than a *lack* of proof that there is *no* such threat. Since, however, there is no need to rely on these additional grounds for denying relocation in this case, any error by the trial court in its interpretation of the statute is harmless.

In the instant case, the trial court affirmatively found that relocation would *not* be in the best interest of the child. This finding was made pursuant to the mandate of Tenn. Code Ann. §§ 36-6-108(e). The evidence does not preponderate against this finding. Accordingly, we affirm the trial court's denial of Mother's request to relocate.

V.

By way of a separate issue, Father contends that he is entitled to attorney's fees on appeal. We disagree.

In support of his contention, Father relies solely on Tenn. Code Ann. § 36-5-103(c) (2001), which provides as follows:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

In *Monroe v. Robinson*, No. M2001-02218-COA-R3-CV, 2003 WL 132463 (Tenn. Ct. App. M.S., filed January 16, 2003), this Court dealt with a similar argument in a case involving a proposed relocation. The trial court denied the mother's request to relocate with the parties' child and awarded the father attorney's fees of $6,000. *Id.* at \*1-\*2. On appeal, the mother argued that the relocation statute, Tenn. Code Ann. § 36-6-108, contains no provision for an award of attorney's fees to either party. *Id.* at \*6. The father asserted that Tenn. Code Ann. § 36-5-103(c) entitled him to the attorney's fees. *Id.*

This Court held in *Monroe* that Tenn. Code Ann. § 36-5-103(c) was inapplicable, in spite of the father's argument that his petition in opposition of relocation contained a request that he be awarded full custody of the child. *Id.* The Court found the father's contention "insufficient to trigger the language of section 36-5-103(c)," noting that "[t]his case involved the relocation of a minor child, not the adjudication of custody." *Id.* at \*7.

Similarly, the instant case is one involving a relocation rather than an adjudication of custody. Therefore, Tenn. Code Ann. § 36-5-103(c) provides Father with no basis for an award of attorney's fees. Further, as Tenn. Code Ann. § 36-6-108 contains no provision for attorney's fees, *see Schremp v. Schremp*, No. W1999-01734-COA-R3-CV, 2000 WL 1839127, at \*4 (Tenn. Ct. App. W.S., December 7, 2000), there is simply no statutory basis for awarding Father his attorney's fees. Accordingly, Father's request for attorney's fees on appeal is denied.

VI.

The judgment of the trial court is affirmed. This case is remanded for enforcement of the trial court's judgment and for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to the appellant, Jodell L. Dunkin.

_____
CHARLES D. SUSANO, JR., JUDGE